**In re Earll and Carol HOLDEN.**

**Earll and Carol HOLDEN**

**v.**

**UNITED STATES of America, by its agency, the Internal Revenue Service (IRS), and Nancy Dubicki, in her capacity as Chief, IRS Insolvency Unit II.**

**Civ. No. 1:97CV233.**

United States District Court,
D. Vermont.

Nov. 12, 1997.

Geoffry F. Walsh, Medicare Advocacy Project, Springfield, VT, for Earll and Carol Holden.

Melissa A.D. Ranaldo, Asst. U.S. Atty., Office of the U.S. Attorney, Burlington, VT, for Nancy Dubicki, Chief of IRS Special Procedures Unit II, United States of America, dba Internal Revenue Service.

## MEMORANDUM OF DECISION

MURTHA, Chief Judge.

The plaintiffs, Earll and Carol Holden (hereinafter "the Holdens"), appeal the Bankruptcy Court's dismissal of their complaint against the Internal Revenue Service ("IRS") for failure to state a claim upon which relief can be granted. In the instant adversary proceeding, the plaintiffs challenge the right of the IRS to place an administrative freeze on their 1996 tax refund. For the reasons set forth below, the ruling of the Bankruptcy Court (Conrad, J.) is REVERSED, and the matter is REMANDED for further proceedings.

### I. Background

The District Court has jurisdiction over appeals from final judgments of the Bankruptcy Court. 28 U.S.C. § 158(a). The Bankruptcy Court's dismissal of the instant adversary proceeding complaint for failure to state a claim upon which relief can be granted constitutes a final judgment subject to *de novo* review. *See In re Parrotte,* 22 F.3d 472, 474 (2d Cir.1994); *accord In re Best Products Co., Inc.,* 68 F.3d 26, 29 (2d Cir. 1995); *Gravel and Shea v. Vermont National Bank,* 162 B.R. 961, 964 (D.Vt.1993).

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court "must accept as true all well-pleaded factual allegations in the Complaint and view them in the light most favorable to Plaintiffs." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 69 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). "General conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). A court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)(footnote omitted).

Thus, for the purpose of determining the instant appeal, the Court accepts as true the following factual allegations as set forth in plaintiffs' complaint. *See generally* Complaint (located in Appendix for the Appellants at A.1). On May 23, 1996, the Holdens filed a petition under Chapter 13 of the Bankruptcy Code. In their Schedule E disclosure of creditors holding unsecured priority claims, they listed a $184.92 pre-petition debt to the IRS, an amount which represented an underpayment of their 1992 personal income tax.

On September 19, 1996, the Bankruptcy Court confirmed the Holden's Chapter 13 plan. The plan provided for full payment of the $184.92 owed the IRS.

In February 1997, Earll Holden changed jobs and experienced a temporary reduction in income. As a result, the Holdens were approximately three months behind in making their monthly $199.00 plan payment to the Chapter 13 trustee. *See* Brief For Appellants (paper 4) at 5 and n.2; *see also* Stipulation (located in Supplemental Appendix of United States) at S.A. 4 (As of April 1997, the Holdens were in default of plan payments in the amount of $990.60). In addition, their local property taxes and home mortgage payments were overdue.

In late February, the Holdens filed for an IRS rapid tax refund, expecting to promptly receive a refund of approximately $2,050 on their 1996 taxes. When the Holdens did not receive their refund, they contacted the IRS and learned that the agency had frozen their refund and earned income tax credit payment because they had filed for bankruptcy.

The IRS withheld the Holdens' refund pursuant to its well-established and oft-criticized practice of freezing refunds to bankruptcy

debtors without adequate notice that the funds have been frozen or instruction on how bankruptcy debtors may gain prompt access to their frozen funds. *See, e.g., In re Burrow,* 36 B.R. 960 (Bankr.D.Utah 1984). Moreover, the IRS did not seek relief from the bankruptcy stay imposed pursuant to 11 U.S.C. § 362(a), either before or after it froze the refund.

On March 13, 1997, an IRS employee told Mrs. Holden that, if she would agree to pay her pre-petition debt from the tax refund, the IRS would send her the balance of the refund. That same day, the Holdens' attorney spoke with the IRS and demanded immediate return of the full refund.

On March 31, 1997, the Holdens filed their adversary proceeding complaint, alleging, *inter alia,* that the IRS' administrative freeze of their refund constituted an unlawful attempt to collect a pre-petition debt in violation of the automatic bankruptcy stay. They allege that the IRS' action caused them to suffer hardship in obtaining necessities and to become delinquent on some of their monthly bills, including their residential mortgage and local property tax payments. They further allege the IRS' freeze placed them in danger of having their bankruptcy case dismissed for failure to bring their plan payments current. *See* 11 U.S.C. § 1328(a).

Because the Holdens' Chapter 13 plan has a duration of approximately four more years, they fear the IRS will again freeze any future refund, thus interfering with their ability to comply with the plan. In addition, the Holdens seek damages and attorney's fees related to the harm they have suffered as a result of the freeze of their refund.

On May 13, 1997, the parties filed a stipulation by which the IRS agreed to issue a check for $990.60 to the trustee to cure the Holdens' default under their confirmed plan and to refund $1,016.40, the balance of the Holdens' 1996 tax refund, directly to the Holdens. The Bankruptcy Court approved the parties' stipulation on May 21, 1997.

On May 19, 1997, the IRS filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. On June 11, 1997, the Bankruptcy Court conducted a hearing on the IRS' motion. U.S. Bankruptcy Judge Francis G. Conrad rendered the following oral ruling:

THE COURT: Ms. Ranaldo, I'm going to grant your Motion to Dismiss. And as you heard, any numerous numbers of time today as I lost my notes on my 12(b)(6) but I think I can recite them by heart is that the purpose of a Rule 12(b)(6) motion is to save the time of litigation and it can only arise in the circumstances where even under well-said, well-pled set of facts assuming them all to be true, there is still no cause of action.

Now, I'm going to rule in your favor but not quite for the reasons that you stated in your papers but somewhat close to it.

You have argued and your worthy opponent says that the freeze really, you have argued all you're doing is freezing it and you're not setting anything off. And your worthy opponent has argued that the IRS can't do this.

Well, first of all I think that the IRS is entitled not only to freeze but also to set off. The reasons for that is many people who are not tax practitioners really do not understand some of the arcane nuances in the Internal Revenue Code but one of them is the IRS looks at every taxpayer and there is sufficient case law to support this as being an entity that has a continuous existence until the taxpayer actually dies or as the corporation gets liquidated and so therefore, in the Internal Revenue Code you have items like carry forwards and carry backs, et cetera, refunds of taxes and so on.

So the obligation that a person owes to the IRS or refunds, whatever is it [sic], it's always a continuing obligation between the IRS and the taxpayer which never ends until the taxpayer actually dies. At that point, the IRS, if you remember your tax law section 1014 you get a stepped-up basis, income and so on and they treat that as the end life of the taxpayer.

Now, the IRS is entitled to set off, not only freeze, the prepetition debt of a tax refund against the Debtor's prepetition unpaid tax liability. In this particular instance under the set of facts here, the

Debtors filed in 1996, that was a 1996 refund, so there's even a mutuality of tax year but I would even go one step further and say they can go back if it was a '95 tax that was due, they could offset a '96 refund because it never, the tax mutuality between the parties never ends. Even though there may be separate tax years, it's still one taxpayer.

Now, the Courts that, I could go on and cite forever but I'll just give you a couple of quotes where they allow them 'to do that. Quick cites would be *in re: Stephen B. Witaker* at 173 B.R. 359 [(Bankr. S.D.Ohio 1994)] which indicates that the IRS is entitled to a setoff.

Another one 'is *In re: Christopher Moore* at 200 B.R. 687 [(Bankr.D.Or.1996)] where the Court held that pursuant to its equitable powers, I'm sorry. Let me scratch that.

The IRS is entitled to use of setoff but the Court could order pursuant to its equitable powers that the IRS refund the tax refund that is not offset against the claims. So, in other words, like in this case here there's a very small tax liability and then the IRS can refund the rest of the claim. But I think they've done that, haven't they here?

MS. RANALDO: We are in the process of doing it. I did check yesterday and I believe the checks have gone out. I don't know whether they have been received.

MR. WALSH: It's my understanding that they were probably received Monday.

MR. SENSINICH: I received the one as Trustee.

THE COURT: So I don't have to order the IRS to issue the checks. In any event, based upon those cases and they just go on, ad nauseam, forever, the IRS is allowed to do this and therefore I'm going to grant the 12(b)(6) motion in its entirety because there is no cause of action here against the Internal Revenue Service.

Hearing Transcript at 6–10 (located in Appendix for the Appellants at A. 94 *et seq.*) On June 19, 1997, the court entered its final order of dismissal.

## II. Discussion

The appellants have tendered half a dozen issues for review. *See* Statement of Issues Presented on Appeal (located in Appendix for the Appellants at A. 108). Without rendering any decision on appellants' remaining claims, the Court finds the most substantial claim relates to whether the IRS violated the automatic stay when it imposed and maintained a freeze on the Holdens' entire tax refund for the apparent purpose of coercing payment of a pre-petition debt that already was scheduled to be fully paid under the terms of the confirmed Chapter 13 plan.

The Bankruptcy Court essentially found, under these circumstances, the IRS' practice of freezing a tax refund is permissible as a matter of law. Both parties suggest that, by ignoring the Supreme Court's recent decision in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), the Bankruptcy Court failed to consider applicable law in rendering its decision. *See* Brief for Appellants (paper 4) at 10; Brief for the United States (paper 7) at 1. The Court agrees and therefore remands the matter for reconsideration in light of recent, relevant case law.

■ "As a general rule, agencies of the United States, including the IRS, are subject to the provisions of the automatic stay, and, similarly, rights of setoff held by the United States and asserted by its agencies are subject to the requirements of Section 553." 5 King et al., Collier on Bankruptcy (hereinafter "Collier") para. 553.06[3] at 553–71 (15th ed.1997); *accord In re Chateaugay Corp.*, 94 F.3d 772, 781 (2d Cir.1996). In relevant part, 11 U.S.C. § 553(a) provides: "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . ."

■ A tax refund is a debt which becomes the property of the estate. *See In re Prudential Lines Inc.*, 928 F.2d 565, 572 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991); Collier para. 553.06[3][b] at 553–74. Under 11 U.S.C.

§§ 362(3), (6) and (7), the filing of a petition in bankruptcy operates as a stay of "any act to obtain possession of the property of the estate ···· or to exercise control over the property of the estate;" "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ;" or "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."

Here, Judge Conrad relied on *In re Whitaker*, 173 B.R. 359 (Bankr.S.D.Ohio 1994), when he determined that the Holdens' complaint failed to state a claim upon which relief can be granted. He implicitly found that, as a matter of law, that the IRS does not violate the automatic stay by imposing an administrative freeze on the refunds of debtors such as the Holdens.

Under these circumstances, *In re Whitaker* does not support dismissal of the Holden's complaint as a matter of law. Unlike the present case, the *Whitaker* court was faced with an IRS request for relief from an automatic stay pursuant to 11 U.S.C. § 362(d). As the *Whitaker* court explained:

> The imposition of the automatic stay against a creditor's right of setoff " . . . does not defeat the right of setoff, rather, setoff is merely stayed pending an 'orderly examination of the debtor's and creditors rights . . . ." Thus, prior to exercising any right to setoff, the creditor must obtain relief from stay from the Bankruptcy Court.

*Id.* at 361 (citations omitted).

▮ By contrast, viewing the complaint in a light most favorable to the plaintiffs, it appears the IRS permanently froze the Holdens' refund until it obtained a stipulation. *See* Collier para. 553.06[3][b] at 553–75 ("Under applicable bankruptcy law, it is inconceivable that a 'netting' of an 'overpayment' to extinguish a tax liability is anything but a setoff.") Moreover, the IRS did not request relief from the stay. *See In re Fugazy Express, Inc.,* 982 F.2d 769, 776 (2d Cir.1992)("Conduct that bypasses the bankruptcy court and violates the automatic stay is plainly not the equivalent of a motion asking the court to lift the stay. . . .")

Furthermore, *In re Whitaker* was decided before the Supreme Court's decision in *Citizens Bank of Maryland v. Strumpf.* The *Strumpf* Court examined the specific question of "whether the creditor of a debtor in bankruptcy may, in order to protect its setoff rights, temporarily withhold payment of a debt that it owes to the debtor in bankruptcy without violating the automatic stay imposed by 11 U.S.C. § 362(a)." 516 U.S. at 17, 116 S.Ct. at 288.

In *Strumpf,* the debtor maintained a checking account at Citizens Bank of Maryland. The debtor also was in default of a bank loan. The bank placed an "administrative hold" on so much of a debtor's checking account as it claimed was subject to a setoff and then filed a motion for relief from the automatic stay and for setoff pursuant to 11 U.S.C. § 362(d). *Id.* The debtor claimed that the bank's action constituted an impermissible setoff which violated 11 U.S.C. § 362(a)(7).

Under these circumstances, however, the Court found the bank's action did not constitute an impermissible setoff because the bank "refused to pay its debt, not permanently and absolutely, but only while it sought relief under § 362(d) of the automatic stay." *Id.* at 19, 116 S.Ct. at 289. In addition, the Court noted that it would "not give §§ 362(a)(3) or (6) an interpretation that would proscribe what § 542(b)'s 'except[ion]' and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt." *Id.* at 21, 116 S.Ct. at 290 (footnote omitted).

Thus, the Supreme Court found "that the mere retention of property subject to a right of setoff for the purpose of preserving the right does not violate the automatic stay, at least so long as the creditor acts diligently in seeking relief from stay to enforce its right." Collier para. 553.08[2] at 553–86. The administrative hold at issue in *Strumpf* did not violate § 362 because, under the circumstances present before the Court, the action "did not constitute an exercise of control or dominion over the property of the estate; it was merely a refusal to perform a promise."

*In re National Environmental Waste Corp.,* 191 B.R. 832, 836 (Bankr.C.D.Cal.1996).

Here, the IRS maintains its administrative freeze is similar to the freeze imposed by the Bank in *Strumpf* and therefore does not constitute a setoff initiated in violation of the automatic stay. However,

> [w]hile clarifying an important question, the Court's decision in *Strumpf* did not lay to rest all of the issues surrounding the practice of the administrative freeze. For example, the Court expressly did not take up the contention that the administrative hold was wrongful because it exceeded the lawful amount of the bank's setoff right. Nor did the Court consider the issue of how long a bank may "temporarily" maintain the administrative hold without seeking relief from stay. The prudent course would be to seek relief from stay on an immediate basis.

Collier para. 553.06[3] at 553–70 (footnote omitted).

This the IRS did not do. Instead, the Holdens allege the IRS deprived them of their funds until they agreed to pay a debt which was already addressed in their bankruptcy plan. Under *Strumpf,* a temporary freeze on funds in which a creditor has a good faith basis for asserting a right of setoff, and which is promptly followed by a request for relief from stay, maintains the status quo and therefore may not violate the automatic stay. *See In re Tillery,* 179 B.R. 576, 581 (Bankr.W.D.Ark.1995). However, accepting as true the facts alleged by the Holdens, the IRS did not simply maintain the status quo. It utilized an open-ended "administrative freeze" to coerce an agreement and to secure the payment of a debt, without seeking prior approval from the Bankruptcy Court. Moreover, on its face, the IRS's withholding of $2050 to ostensibly secure collection of $184 was unfair and apparently not in good faith.

Here, the result of the freeze imposed on the Holdens' refund was the collection of a pre-petition claim without first seeking relief from the stay. This action, if pursued by any other entity, would be designated a setoff despite its denomination as temporary freeze. *See United States v. Norton,* 717 F.2d 767, 772 (3d Cir.1983) (retention of debtor's funds evidences intent to setoff); *In re Burrow,* 36 B.R. at 963 ("I find that the IRS' purpose in withholding debtors' tax refund was to collect or recover its pre-petition claim for unpaid taxes. The automatic stay was in force at the time the IRS withheld the fund, the debtors' plan to pay the IRS in full had already been confirmed, and the IRS had no setoff rights in the tax refund.") In short, the fact that the IRS did not seek relief from the stay and would not provide the Holdens with the bulk of their refund until they initiated an adversary proceeding and executed a stipulation easily can be construed as "forbidden self-help in violation of the automatic bankruptcy stay." *Eastern Airlines, Inc. v. Chemical Bank, Inc.,* 1997 WL 282264 (S.D.N.Y.1997). Under these circumstances, the Bankruptcy Court erroneously concluded that the Holdens' complaint, as a matter of law, failed to state a claim upon which relief can be granted.

### III. Conclusion

Construed in a light most favorable to the plaintiffs, the Holden's complaint raises serious questions regarding the IRS' compliance with the Bankruptcy Code's automatic stay provisions. The Bankruptcy Court's grant of the IRS' Motion to Dismiss is REVERSED. The instant matter is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

SO ORDERED.