# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 14, 2022            Decided May 26, 2023

No. 22-1006

LUIS VILLA-ARCE,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

On Appeal from a Decision
of the United States Tax Court

———

*Robert R. Duncan* argued the cause for appellant. With him on the briefs were *Matthew S. Apfel* and *James Podolny*.

*Marie E. Wicks*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Bruce R. Ellisen*, Attorney.

Before: PILLARD and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Luis Villa-Arce sent information to the Whistleblower Office of the Internal Revenue Service that he believed showed a company was underpaying taxes by taking unjustified deductions and using improper pricing practices. Section 7623 of the Internal Revenue Code entitles whistleblowers to a percentage of the proceeds the IRS collects based on whistleblower information identifying underpayment of taxes or violations of internal revenue law. Villa-Arce claims he is entitled to a mandatory whistleblower award under Section 7623.

The Whistleblower Office forwarded Villa-Arce's submission to an appropriate IRS investigative division, where a revenue agent decided to proceed with an examination (*i.e.*, an audit). During the examination, the revenue agent investigated the tax issues Villa-Arce pointed out, along with unrelated tax issues that the agent identified. Ultimately, the agent concluded that the company did not violate tax laws on the issues that Villa-Arce reported, but ordered tax adjustments on several unrelated issues. Under Treasury regulations, a whistleblower is not entitled to recover proceeds on issues unrelated to the whistleblower's submission that the IRS identifies through its own information gathering. 26 C.F.R. § 301.7623-2(a)(2), (b). The Whistleblower Office accordingly denied Villa-Arce's application for an award.

Villa-Arce challenges the denial as arbitrary and capricious. He claims the administrative record shows that the revenue agent relied on Villa-Arce's submission in investigating the unrelated issues. He also argues that the Whistleblower Office's denial letter insufficiently explains why the Office denied any award.

The Tax Court entered summary judgment in favor of the IRS, and we now affirm. The administrative record shows that

the Whistleblower Office's denial was consistent with Treasury regulations defining when a whistleblower's contribution is sufficient to justify an award. And the determination letter sufficiently explained the Office's reasoning.

## BACKGROUND

Whistleblowers who send information on tax underpayment or internal revenue law violations are entitled to awards under Internal Revenue Code Section 7623 if the Internal Revenue Service (IRS) "proceeds with" an administrative action and collects money "based on information" the whistleblower provided. I.R.C. § 7623(b)(1). The statute generally requires payment to a whistleblower of 15 to 30 percent of the Service's resultant proceeds, and provides that within that range the award amount "shall depend on the extent to which the individual substantially contributed to such action." *Id.* In 2016, Luis Villa-Arce submitted information to the IRS that he thought revealed that a company he identified was falsely claiming deductions of $1,000 per employee every month, a practice he called a "head-tax" deduction. Later, Villa-Arce made a supplemental filing that he thought showed the company also was violating Internal Revenue Code Section 482 through a "transfer-pricing" scheme: overpaying its parent company for information technology services.

After reviewing Villa-Arce's information, an analyst in the Whistleblower Office referred the information to the IRS Large Business & International Division. The revenue agent opened an examination into the head-tax and transfer-pricing issues that Villa-Arce identified. During the examination, the revenue agent also investigated unrelated issues. At the close of the investigation, the IRS ordered tax adjustments on the foreign

tax credit and several categories of improper deductions: "[a]dvertising," "[c]ost of goods sold," "[d]epreciation," "other [d]eductions," and "[r]epairs and maintenance." App. 172-73, 175. In a report after the examination, the revenue agent informed the Whistleblower Office that none of the issues Villa-Arce identified led to adjustments.

The Whistleblower Office denied Villa-Arce's application for an award. The Whistleblower Office issued a preliminary award denial letter to Villa-Arce, to which he responded through counsel, explaining why he thought the information he submitted merited an award and requesting reconsideration. Several weeks later, the Whistleblower Office issued a final determination letter denying any award. The letter stated that "the IRS took no action on the issues you raised." App. 203. It noted that the IRS opened an examination after receiving Villa-Arce's submission, but explained "that review did not result in the assessment of additional tax, penalties, interest, or additional amounts with respect to the issues you raised." App. 203. Thus, while the letter acknowledged that "[t]he IRS did assess additional tax, penalties, interest or additional amounts," it told Villa-Arce "the information you provided was not relevant to those issues." *Id.*

Villa-Arce petitioned the Tax Court for review. On cross-motions for summary judgment, the Tax Court ruled in favor of the IRS. The court held that the Whistleblower Office followed appropriate procedures, and that "the administrative record establishes that the adjustments did not relate to the whistleblower information and no adjustments were made based on the head tax deduction or transfer pricing issues." App. 324.

Villa-Arce appealed. In Villa-Arce's view, the administrative record showed that the IRS relied on his

information for the tax adjustments it ordered against the target company, entitling Villa-Arce to an award under Internal Revenue Code Section 7623. Villa-Arce also challenged the Whistleblower Office's determination letter for insufficiently explaining how it concluded that the IRS's financial recovery was not based on his submission.

We heard argument on the same day as a related appeal by a different tax whistleblower, *Lissack v. IRS*, No. 21-1268. In both cases, the IRS argued primarily that the Tax Court does not have jurisdiction over Whistleblower Office award denials when the whistleblower did not receive an award, but also defended the denials as consistent with the statute and Treasury regulations and supported by the administrative record.

## DISCUSSION

On *de novo* review, we begin by confirming the Tax Court's jurisdiction, then consider whether the IRS was entitled to summary judgment. *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014). We conclude that the Whistleblower Office did not act arbitrarily or capriciously in denying Villa-Arce's award, and that its final letter adequately explained the determination.

## A.

Under subsection 7623(b)(4) of the Internal Revenue Code, the Tax Court has jurisdiction over "[a]ny determination regarding an award under" subsections 7623(b)(1), (2), or (3). Those provisions set the conditions for payment of awards to whistleblowers out of proceeds they help the IRS to collect. The IRS argues that the Whistleblower Office makes a reviewable "determination regarding an award"—and the Tax Court has jurisdiction—only in the event the IRS collects proceeds based on the whistleblower submission. In the related

case, *Lissack v. IRS*, we rejected that argument and held that the Whistleblower Office made a reviewable "determination regarding an award" within the meaning of subsection (b)(4) where the IRS had opened an examination into the whistleblower's submission and made substantial tax adjustments. *Lissack v. IRS*, No. 21-1268, slip op. at 14-15. In Villa-Arce's case, as in Lissack's, the Whistleblower Office referred the submission to the IRS, the IRS initiated an examination, and the IRS ultimately made the tax adjustment that is the object of the parties' dispute on the merits. We are thus satisfied that the Tax Court had jurisdiction over Villa-Arce's appeal.

**B.**

On the merits, Villa-Arce challenges as arbitrary and capricious the Whistleblower Office's decision to deny him an award. *See* 5 U.S.C. § 706(2)(A). He argues that he is entitled to a portion of the proceeds the IRS collected from the target Taxpayer because "the IRS was not already investigating Taxpayer when Mr. Villa-Arce submitted his Form 211, and had no plans to," so any audit and ensuing increased tax liability of that taxpayer was "based on the allegations in Mr. Villa-Arce's Form 211." Appellant's Br. 16.

The Tax Court granted summary judgment to the IRS. The court explained that the administrative record shows that the IRS recovered proceeds only on issues "not related to the whistleblower information," App. 323, and held that, under the statute and regulations, no award is justified under those circumstances. We affirm the judgment of the Tax Court.

Internal Revenue Code Section 7623 and the Treasury regulations interpreting it permit the course the IRS took here: dividing separate portions of an examination into distinct administrative actions and rewarding the whistleblower only if

the portion based on the whistleblower's submission yields a tax adjustment. Under the statute, if the IRS "proceeds with any administrative . . . action . . . based on information brought to the [agency's] attention by an individual," that individual is entitled to an award of "at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions)." I.R.C. § 7623(b)(1).

A Treasury rule interpreting the statute, which we refer to as the Whistleblower Definitions Rule, allows the IRS to treat investigations into unrelated tax issues of the same taxpayers as separate "administrative action[s]." 26 C.F.R. § 301.7623-2(a)(2), (b)(2) (Example 2). The part of the Rule defining "proceeds . . . based on" states that "the IRS proceeds based on information provided by a whistleblower when the information provided substantially contributes to an action against a person identified by the whistleblower." *Id.* § 301.7623-2(b)(1). An example accompanying that definition describes a scenario in which an investigation "proceeds . . . based on" information independent of the whistleblower submission. *Id.* § 301.7623-2(b)(2) (Example 2). In the example, "the IRS obtains, through the issuance of Information Document Requests (IDRs) and summonses, additional facts that are unrelated to the activities described in the information provided by the whistleblower" and "[b]ased on these additional facts . . . expands the scope of the examination." *Id.* The rule explains that, in such a case, the examination portions "relating to the additional facts . . . are not actions with which the IRS proceeds based on the information provided by the whistleblower because the information provided did not substantially contribute to the action." *Id.*

Villa-Arce does not challenge the validity of the Whistleblower Definitions Rule but argues that, correctly applied, it entitles him to an award. He acknowledges his

submission did not reference the issues that led to tax adjustments, which were based on the company's foreign tax credit calculation and deductions for "'Advertising,' 'Depreciation,' and 'Repairs and maintenance.'" Appellant's Br. 17. But he argues that his submission put the IRS agent in a position to discover those problems.

Villa-Arce's claim rests on two incorrect premises, one legal and one factual. First, he argues that the IRS initiated an examination and recovered a tax adjustment only because of his submission. As a matter of law, however, the IRS is not required to reward every whistleblower who identifies a delinquent taxpayer. Under the statute as the IRS has definitively interpreted it, a whistleblower is not entitled to recover proceeds from portions of an examination based on information unrelated to the whistleblower claim, such as facts that the revenue agent uncovers only through independent investigation. 26 C.F.R. § 301.7623-2(b)(1), (b)(2) (Example 2). Here, the IRS pursued two separate administrative actions: an investigation of the head-tax and transfer-pricing issues Villa-Arce identified, and another investigation of unrelated issues, such as the foreign tax credit. To show that the IRS collected proceeds "based on information" he submitted, I.R.C. § 7623(b)(1), Villa-Arce would have had to show that the IRS ordered tax adjustments in the administrative action on the issues he identified.

Second, Villa-Arce's factual argument—that the agent never expanded the examination beyond the issues Villa-Arce identified—falls short because the administrative record belies it. The record shows the IRS made adjustments and recovered proceeds based on the revenue agent's independent information gathering, not based on the information Villa-Arce supplied. While reviewing the company's tax return in response to Villa-Arce's submission, the revenue agent

identified additional issues and expanded the investigation to address them. During the expanded investigation, the agent visited the company's place of business, communicated with company representatives, sent information document requests, and reviewed documents. The investigation lasted more than two years, and the agent reported over 400 hours of work. In a final report, the revenue agent stated that Villa-Arce's information did not contribute to the issues that led to the adjustments, and the Tax Court credited that report.

Villa-Arce challenges the revenue agent's statements and the Tax Court's interpretation, contending that his submission "influenced" and "guided" the examination because, in his view, the issues that ultimately resulted in tax adjustments are similar to the issues he identified. Appellant's Br. 17. Villa-Arce contends the agent's investigation into "subcontracting invoices" is "directly correlate[d]" with his own "allegation that [the company] claimed fictitious business expense deductions for temporary employees supplied by staffing agencies." *Id.* at 17. Villa-Arce similarly argues that an adjustment related to depreciation was based on his submission about the head-tax issue. The revenue agent must have relied on his submission, Villa-Arce says, because the agent "never expanded the scope of the examination after commencing it." *Id.* at 18.

The Whistleblower Office logically and reasonably concluded otherwise. The administrative record shows that the IRS did not make tax adjustments on either the head-tax or transfer-pricing issue. The revenue agent investigated both of those issues. The IRS did not order any adjustments on the deductions relevant to the head-tax issue; the portion of the revenue agent's activity record that Villa-Arce cites suggests that the depreciation issue supporting the adjustment related to "how the life of property was determined," not to the head tax

Villa-Arce described. App. 73. On the transfer-pricing issue, an examiner in the IRS International Division concluded that the pricing agreement was within the accepted range.

The Tax Court accordingly correctly granted summary judgment in favor of the IRS on Villa-Arce's challenge to the Whistleblower Office's determination. Villa-Arce admits that his submission "did not explicitly reference" the tax issues that led to adjustments, Appellant's Br. 17, and the administrative record supports the revenue agent's statements that those tax issues were not related to the issues Villa-Arce identified. The record also shows substantial independent information gathering by the revenue agent. *See* 26 C.F.R. § 301.7623-2(b)(2) (Example 2). The Whistleblower Definitions Rule allows the IRS to treat a portion of an examination into unrelated tax issues as a separate administrative action, and Villa-Arce does not show that the agency incorrectly applied that rule here.

## C.

Finally, the Whistleblower Office sufficiently explained the award denial. Villa-Arce argues that the Office's final determination letter "failed to articulate an explanation for its denial that connects the facts in the administrative record to its denial of Mr. Villa-Arce's Form 211." Appellant's Br. 20. In particular, he says that the determination letter "failed to reconcile the record evidence supporting" his claim with the Whistleblower Office's "stated reasons for denial." Reply Br. 10. But, as discussed in the previous section, the facts as reflected in the administrative record do not make out a legally viable claim. The reasons stated in the determination letter are entirely consistent with that conclusion.

We have previously held that a determination letter sufficed where it "notified [the whistleblower] of the

Whistleblower Office's final decision on his claim." *Myers v. Comm'r*, 928 F.3d 1025, 1033 (D.C. Cir. 2019). The letter Villa-Arce received meets that standard. The final determination letter disclosed in general terms the IRS's reasons for denying Villa-Arce's petition, and that explanation is adequate.

\* \* \*

For the foregoing reasons, we affirm the Tax Court's decision.

*So ordered.*